# In the United States Court of Federal Claims

No. 07-689 C
(Filed: May 8, 2008)
(Reissued for publication: June 18, 2008)

| | | |
|---|---|---|
| **DONNA MAURAS,**<br>**ANTHONY E. MAURAS**<br><br>Plaintiffs,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | * | Breach of contract; motion to dismiss; RCFC 12(b)(1); subject matter jurisdiction; standing; RCFC 12(b)(6); failure to state a claim upon which relief can be granted; *Twombly*; speculative damages; RCFC 8(a); RCFC 8(e)(2); RCFC 11(b); 5 U.S.C. § 2105 |

*Mary Judge Ryan*, Ryan Turchik, P.C., Tucson, AZ, counsel of record for Plaintiff.

*Dawn Elyse Goodman*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, counsel of record for Defendant, with whom were *Jeffrey S. Buckholtz*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Kirk Manhardt*, Assistant Director, United States Department of Justice, Washington, DC.

---

**OPINION AND ORDER**

---

**DAMICH**, Chief Judge.

Plaintiffs Anthony and Donna Mauras, husband and wife, have filed suit against the United States Social Security Administration ("SSA") for an alleged breach of a contract with Mrs. Mauras, a former SSA employee, to provide any prospective employers with a neutral reference about her employment with the agency. Defendant United States ("the Government"),

acting on the SSA's behalf, now moves this Court, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), to dismiss Mr. Mauras from the complaint for lack of subject matter jurisdiction and, under RCFC 12(b)(6), to dismiss Mrs. Mauras's action for failure to state a claim upon which relief can be granted. For the reasons stated herein, the Government's motion to dismiss Mr. Mauras from the case is GRANTED, leaving Mrs. Mauras as the sole plaintiff in this action. The Court, however, DENIES the Government's motion to dismiss Mrs. Mauras's claim.

## I. BACKGROUND

Mrs. Mauras was employed between 1992 and 2005 at the SSA's Office of Hearings and Appeals in Tucson, Arizona, where she resided at all relevant times with Mr. Mauras. Complaint ("Compl.") ¶¶ 2-4. On October 21, 2004, she received an amended proposed removal letter from the SSA charging her with threatening to inflict bodily harm on a co-worker. *See id.*, Exhibit ("Ex.") A at 1.

Consequently, in April 2005, Mrs. Mauras and the SSA entered into a settlement agreement entitled Resolution and Agreement ("Settlement Agreement"). *Id.* ¶ 8, Ex.A. Pursuant to the Settlement Agreement, Mrs. Mauras, inter alia, resigned her position with the SSA. *Id.* ¶ 10, Ex. A at 1, ¶ 1. The SSA, in turn, agreed to provide a neutral reference to prospective employers seeking information about Mrs. Mauras's employment with the agency. Specifically, the SSA would only release the following information: name, position title and occupational series, annual salary rates, duty status and grades, position description, job elements, and performance standards. *Id.* ¶ 11, Ex. A at 1, ¶ 2; *see also* 5 C.F.R. § 293.311. The Settlement Agreement also contained no provisions for monetary or other relief or for dispute resolution in the event of a breach by one of the parties. *See generally* Compl., Ex. A.

On August 8, 2006, Mrs. Mauras received a letter notifying her of her "selection" as an Administrative Assistant at the Office of the Associate Administrator for Safety of the Federal Railroad Administration ("FRA"), a branch of the United States Department of Transportation. *Id.* ¶ 13, Ex. B at 2. This position required relocation to Cambridge, Massachusetts. *Id.* The letter specified that Mrs. Mauras should "report for in-processing" at 8:30 a.m. on September 5, 2006, and that she would be compensated at a pay grade of GS-303-6 Step 10–an annual salary of $43,807. *Id.* At least ten days before her start date, Mrs. Mauras was to complete two official forms to aid in a background investigation–a Questionnaire for Non-Sensitive Positions and a Declaration for Federal Employment. *Id.* She was also to return a Statement of Relevant Non-Federal Service, Credit Release form, in order to authorize a credit check. *Id.* Finally, upon reporting for "in-processing," Mrs. Mauras was to present a completed Form I-9, Employment Eligibility Verification, and also submit related documents in order for the FRA to verify her identity and eligibility for employment in the United States. *Id.*

Mrs. Mauras, however, never began working at the FRA. In a letter dated August 31, 2006, the FRA informed her that it had rescinded its "offer of employment" due to "information

obtained during a routine reference check." *Id*. ¶ 15, Ex. B. at 1. The record neither specifies whether Mrs. Mauras completed any of the requested forms nor details the information obtained in the reference check.

Mr. and Mrs. Mauras, on September 24, 2007, filed a complaint in this Court for breach of contract. *Id*. Specifically, they alleged, "upon information and belief," that the SSA had breached the Settlement Agreement's neutral reference provision, leading to Mrs. Mauras's "loss of [her] [FRA] position." *Id*. ¶ 16. The complaint seeks $43,807 in monetary damages, which amounts to one year's salary at the FRA, plus applicable interest until paid, as well as costs and attorneys' fees, and all other relief the Court deems just and proper. *Id*., Prayer for Relief.

On December 3, 2007, the Government filed the instant motion to dismiss. Defendant's Motion to Dismiss ("Def.'s Mot."). Mr. and Mrs. Mauras responded to this motion on January 3, 2008. Opposition to Motion to Dismiss ("Pl.'s Opp'n"). The Government replied to this response on January 14, 2008, thereby completing briefing in this matter. Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Def.'s Reply").

## II. MOTION TO DISMISS MR. MAURAS FROM THE CASE

Mr. and Mrs. Mauras do not object to removing Mr. Mauras as a plaintiff "if determined appropriate by this Court." Pl.'s Opp'n at 4. Mr. Mauras, their opposition brief notes, was "named as a necessary party because Arizona is a community property state and [c]ourts have ruled the spouse's presence is necessary." *Id*. But even if they had objected, the Court would still have lacked subject matter jurisdiction over the complaint so far as his participation in this matter was concerned. The burden of establishing a court's jurisdiction lies with a case's plaintiff. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 179, 189 (1936). A plaintiff's statement of a claim determines whether a case is within a court's competence. *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914); *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997). The main provision granting consent to sue in this Court is the Tucker Act, which allows actions "founded . . . [inter alia] upon any express or implied contract with the United States." 28 U.S.C. § 1491(a); *see also United States v. Testan*, 424 U.S. 392, 397 (1976). However, privity of contract with the Government is a prerequisite for instituting such a claim. *Oakland Steel Corp. v. United States*, 33 Fed. Cl. 611, 613 (1995) (citing *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984)).

Mr. Mauras was not a party to the contract at issue. Neither was he injured by the SSA's alleged breach. His only connection to this case is the fact that he is Mrs. Mauras's husband. And while Mr. Mauras may have joined his wife in filing the complaint because of an Arizona state law provision, standing to sue in a federal court remains a matter of federal law. *See Ex parte Schollenberger*, 96 U.S. 369, 377 (1877) (United States courts derive jurisdiction solely from the Constitution and laws of the United States; state laws or regulations cannot affect this authority). The Court must, therefore, dismiss Mr. Mauras as a plaintiff in this case for lack of subject matter jurisdiction.

## III. MOTION TO DISMISS MRS. MAURAS'S CLAIM

### A. Standard of Review

A motion to dismiss for failure to state a claim upon which relief can be granted is appropriate when a plaintiff fails to allege facts entitling him to a remedy. *Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003). The obligation to provide grounds for relief "requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S.Ct. 1955, 1964-65 (2007). While a "formulaic recitation" of a cause of action's elements simply will not suffice, a well-pleaded complaint will survive a motion to dismiss even if it appears that recovery is very unlikely. *Id*. at 1965 (citation omitted). A court must assume the facts alleged therein to be true and draw all reasonable inferences in a plaintiff's favor. *Id* at 1965; *Godwin*, 338 F.3d at 1377. Factual allegations need not be detailed and only need to "raise a right to relief above the speculative level" or "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*. 127 S.Ct. at 1964-65, 1974. Once a claim for relief has been adequately stated, it may be supported by showing "any set of facts consistent with the allegations in the complaint." *Id*. at 1969 (citations omitted).

### B. Discussion[2]

The parties' briefing focuses on two issues. First, the parties address whether the Settlement Agreement entitles Mrs. Mauras to monetary relief in the event of a breach. *See* Def.'s Mot. at 7-9; Pl.'s Opp'n at 4-7. Second, the briefs discuss whether Mrs. Mauras has proven her entitlement to the money damages she seeks, namely, the salary she would have earned had she worked at the FRA for one year. *See* Def.'s Mot. at 7-9; Pl.'s Opp'n at 5-7; *see also* Def.'s Reply at 1-5. Pursuant to the standard of review governing the Government's motion to dismiss on RCFC 12(b)(6) grounds, the Court finds that Mrs. Mauras has stated a viable claim in both respects.

#### 1. The Settlement Agreement and monetary relief

The Government contends that Mrs. Mauras cannot recover the compensation requested because the Settlement Agreement "does not provide for monetary relief in the event of a breach." Def.'s Mot. at 7-8; *see also* Compl., Ex. A. Interpreting the Government's argument to mean that a contract underlying a contract claim under the Tucker Act must be money-mandating, Mrs. Mauras responds that such a claim need not be founded on any money-mandating authority and that a money-mandating statute, constitutional provision, regulation, or executive order "is only required as a basis of jurisdiction if no contract is asserted." Pl.'s Opp'n

---

[2]While Mr. and Mrs. Mauras jointly filed this action, this Court, having decided to dismiss Mr. Mauras from the complaint for lack of subject matter jurisdiction, will no longer refer to him as a plaintiff.

at 4. She continues to argue that "[j]urisdiction over this matter has been established because the claim is based on a contract with the Government." *Id*. at 5 (quoting *Westover v. United States*, 71 Fed. Cl. 635, 640 (2006)).

A settlement agreement is a contract and is, therefore, subject to contract law. *See Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370 (Fed. Cir. 1999). One principle of contract law holds that a party may seek damages in any action for breach of contract unless the contract at issue provides otherwise. *United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996) (plurality opinion) (citing, *e.g.*, *Restatement (Second) of Contracts* § 346, cmt. a (1981)). In government contracts, as with private agreements, there exists a presumption "in the civil context" that a damages remedy will be available upon a breach. *Sanders v. United States*, 252 F.3d 1329, 1334 (Fed. Cir. 2001). As a result, in a contract claim under the Tucker Act, the contract at issue does not have to mandate monetary relief in the event of a breach. *See Westover*, 71 Fed. Cl. at 640 (citing *Ontario Power Generation v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004); *Martinez v. United States*, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003); *Hamlet v. United States*, 63 F.3d 1097 (Fed. Cir. 1995)).[3] Only Tucker Act claims not sounding in contract must seek money damages on the basis of a constitutional provision, statute, regulation, or executive order. *See id*. The Settlement Agreement's lack of a provision for monetary relief, or any other provision for relief in the event of a breach, consequently does not preclude Mrs. Mauras from seeking the "default remedy" of money damages for the SSA's alleged failure to provide a neutral employment reference to the FRA. *Winstar*, 518 U.S. at 885 (while this case occurred in the different context of three financial institutions asserting that new federal limits on special accounting methods for the acquisition of failed thrifts violated prior Government commitments, the plurality opinion notes that money damages are a default remedy for all breach of contract actions).

**2. Whether Mrs. Mauras has proven entitlement to the monetary relief she seeks**

In the instant motion, the Government does not dispute the Settlement Agreement's validity or whether the SSA breached the Agreement, instead restricting itself to whether Mrs. Mauras has stated a viable claim for collecting damages. Def.'s Mot. at 7 ("Even taking as true Mrs. Mauras's contention that she entered into a valid contract with the United States and that [the] SSA breached a duty arising out of that contract, Mrs. Mauras has failed to state a claim for damages that can be awarded by this Court."). The crux of the Government's case in this respect is that Mrs. Mauras is not entitled to the monetary relief she seeks–an amount equivalent to one year's salary at the FRA–because she was never officially "appointed" to the position originally offered to her. *Id*. at 8. Additionally, the Government avers that the "asserted damages . . . are a product of pure speculation" because Mrs. Mauras does not show how "[she] would have cleared

[3]*But see Schnelle v. United States*, 69 Fed. Cl. 463, 466-67 (2006) (the court lacked jurisdiction under the Tucker Act where a settlement agreement did not mandate monetary relief for a breach, but instead required reinstatement of the actions that the parties had settled).

the hurdles listed in the offer letter" to obtain an appointment nor prove that she would have remained employed at the FRA for one year. *Id*. at 8-9; *see also* Def.'s Reply at 2-5. The Government also briefly mentions that Mrs. Mauras does not establish that the damages she claims arose from the SSA's alleged breach of the Settlement Agreement. Def.'s Mot. at 9.

Mrs. Mauras only counters that the FRA's letters to her demonstrate that she "was appointed to the position," given how her formal selection letter "was an unconditional offer with a specific start date in a specific location." Pl.'s Opp'n at 6. She continues to state that the Government's "suggestion that additional paperwork was to be filled out at the job location does not negate the appointment." *Id***.**

The issue of whether Mrs. Mauras was "appointed" to the FRA position is not dispositive as to whether she has stated a viable breach of contract claim. In fact, the parties' arguments primarily implicate case law concerning when a person becomes a federal employee in the context of claims for back pay and benefits for work already performed, and not breaches of contract. *See* Def.'s Mot. at 8 (citing *Bernabe v. Office of Personnel Mgmt.*, 198 Fed. Appx. 961, 964 (Fed. Cir. 2006) (unpublished); *Ainslie v. United States*, 355 F.3d 1371, 1374-75 (Fed. Cir. 2004); *Watts v. Office of Personnel Mgmt.*, 814 F.2d 1576, 1580 (Fed. Cir. 1987); *Horner v. Acosta*, 803 F.2d 687, 692 (Fed. Cir, 1986)); Def.'s Reply at 3 (citing *Horner*, 803 F.2d at 693 (citing *Costner v. United States*, 665 F.2d 1016, 1020, 1022 (Ct. Cl. 1981)*; Skalafuris v. United States*, 683 F.2d 383 (Ct. Cl. 1982); *Goutos v. United States*, 552 F.2d 922, 924 (Ct. Cl. 1976)); *Tierney v. United States*, 168 Ct. Cl. 77 (1964)); Pl.'s Opp'n at 6 (citing *Bernabe*, 198 Fed. Appx. at 965).

Whether Mrs. Mauras alleges facts consistent with a claim for breach of contract is what is at issue here. *See Twombly*, 127 S.Ct. at 1964-65. The elements of a viable action for breach of contract are: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach. *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). Again, the Court only needs to consider whether Mrs. Mauras has plausibly claimed that she suffered damages as a result of a breach, since the Government does not contest, for now, whether the Settlement Agreement amounted to a valid contract, that the contract imposed a duty on the SSA, or that the SSA breached such a duty. *See supra* p. 5; *see also Twombly* at 1964-65. If Mrs. Mauras eventually proves a "fact of damage," an appropriate monetary amount to remedy this harm need not be calculated with absolute certainty and a reasonable approximation will suffice.[4] *Celeritas Tech., Ltd. v. Rockwell Int'l. Corp.*, 150 F.3d 1354, 1360 (Fed. Cir. 1998). A defendant who causes injury simply "will not be heard to complain" that damages cannot be ascertained with "mathematical precision." *Id*; *see also Story Parchment Co. v. Paterson Parchment Paper*

[4]Indeed, one court has stated that a "prayer for relief does not need to set out the calculations underlying a damages amount" because "[p]recise damages are often difficult to ascertain at the pleading stage . . ." *Oculus Innovative Sci. v. Nofil Corp.*, No. C 06-06186 SI, 2007 WL 2600746, at *5 (N.D. Cal. Sept. 10, 2007).

*Co.*, 282 U.S. 555, 562 (1931) (a prohibition on recovery of uncertain or speculative damages, upon a finding of liability, applies to damages that are not "the certain result of the wrong").

By submitting a copy of her communications with the FRA, Mrs. Mauras sufficiently asserts that she suffered a harm in the form of having her job offer rescinded. Compl., Ex. B; *see also Westover*, 71 Fed. Cl. at 640 (if a plaintiff's job application is rejected because of a former Government employer's breach of a grievance settlement agreement to provide a neutral employment reference, a court can "fashion a remedy for the plaintiff"). The Government's arguments that Mrs. Mauras was never appointed to the FRA and that, consequently, her claim for money damages is prohibitively speculative are irrelevant. Indeed, what the FRA's letter "rescinding" the job offer to Mrs. Mauras illustrates is that her failure to obtain an appointment actually constitutes a harm underlying her basis for relief. *See Twombly*, 127 S.Ct. at 1969 (once a plaintiff adequately states a claim, the claim may be supported by showing "any set of facts consistent with the allegations in the complaint"). And while the Government contends that Mrs. Mauras presents no connection between the FRA's actions and the SSA's breach, such pleading is permissible if it is based, as here, upon "information and belief," in addition to being subject to the requirement that the Court assume facts alleged to be true and draw all reasonable inferences in her favor. *See id*. at 1965; *Godwin*, 338 F.3d at 1377; RCFC 8(a)(2) (a pleading only needs to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief"); RCFC 11(b) (an attorney's signature indicates that he or she has prepared a pleading on the basis of "the best of the person's knowledge, *information, and belief*" after a reasonable inquiry) (emphasis added); RCFC 12(b)(6); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224 (3d ed. 2004).

What makes the complaint and briefing in this matter needlessly confusing, however, is that they appear to be imprecisely worded and unclear when viewed in light of the exhibits Mrs. Mauras has submitted. For example, both parties refer to or depict "appointment" and "employment" as if the differences between both terms were merely semantic. *See* Def.'s Mot. at 9 (stating that "Mrs. Mauras was never appointed . . . and is therefore, not entitled to the salary she would have received in that position"); Pl.'s Opp'n at 6-7 (stating that Mrs. Mauras was "appointed" to the FRA position, but also referring to the "rescission of the position"); Compl. ¶ 16 (noting "loss of the position at the FRA"). But the United States Court of Appeals for the Federal Circuit has held that "there is a clear difference between being an appointee and an employee, and the lines are drawn by [5 U.S.C. § 2105]." *McCarley v. Merit Sys. Prot. Bd.*, 757 F.2d 278, 280 (Fed. Cir. 1985) (citing 5 U.S.C. § 2105), *overruled on other grounds by Hagmeyer v. Dep't. of Treasury*, 852 F.2d 531 (Fed. Cir. 1988).[5] And, taken literally, Mrs. Mauras's use of such phrases as "loss of the position at the FRA" in her complaint denotes an

---

[5]This holding is cited by one of the decisions upon which the Government relies. Def.'s Mot. at 8 (citing *Ainslie*, 355 F.3d at 1374-75). In turn, 5 U.S.C. § 2105 defines a federal employee (unless otherwise provided) as one who is: (1) "appointed in the civil service" by specified officials; (2) "engaged in the performance of a Federal function under authority of law or an Executive act"; and (3) subject to the supervision of one of the officials who appointed him. 5 U.S.C. § 2105(a).

actual termination of employment as opposed to a job offer's rescission. Compl. ¶ 16. Yet Mrs. Mauras does not state that she wishes to present such an alternative theory of damages.[6]

Despite these problems, Mrs. Mauras has alleged facts consistent with a breach of contract. She has, therefore, stated a claim that may entitle her to relief. But the Court strongly encourages Mrs. Mauras to more explicitly delineate any other harms she may have suffered or confirm that rescission of a job offer constitutes the only damage she intends to assert. Both parties should also be more precise in their use of terminology with legal significance and in presenting their arguments as this action proceeds.

## IV. CONCLUSION

The Court hereby DISMISSES Anthony Mauras from this case due to a lack of subject matter jurisdiction because he had no privity of contract with the SSA. As there is no just reason for delay, the Clerk of the Court is consequently directed to enter judgment accordingly. But the Court also DENIES the Government's motion to dismiss Mrs. Mauras's action for failure to state a claim upon which relief can be granted. Finally, the Court ORDERS the Government to file its answer to Mrs. Mauras's complaint on or before Friday, May 23, 2008.

s/Edward J. Damich
EDWARD J. DAMICH
Chief Judge

---

[6] *See* RCFC 8(e)(2) ("A party may set forth two or more statements of a claim . . . alternately or hypothetically, either in one count . . . or in separate counts . . . [and] [w]hen two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements.").